Good morning, Your Honors. John Lemon, Federal Defender for Mr. Marrufo. Your Honors, the District Court erred first in excluding crucial exculpatory evidence of third-party culpability. Secondly, the District Court erred in permitting the government to introduce statements obtained after agents deliberately used an invalid and confusing Miranda advisal. Third, the District Court erred in permitting the government to introduce evidence of a personal use amount of a small amount of marijuana to prove knowledge of the distributable quantity of methamphetamine that was in the car. And finally, the District Court erred in finding that the government's dual-purpose checkpoint did not violate the Fourth Amendment. Let me ask you a quick question on that first point. I would assume that had your client done what I'm sure you wished happened after the Miranda warnings and had not said anything, you would of course be arguing strenuously that they can't be used as any inference of guilt, correct? That's correct. But it's okay to use it with respect to the passenger or the other person in the car who after getting a Miranda warning doesn't say anything and you want to be able to introduce that in this case as evidence that he was guilty? Absolutely, and I think that this is a very easy case because this guy's not a defendant, he's not a co-defendant, he's not even a witness. He's gone. The government released him. And the thing that, the rationality underpinning... No, I'm just getting to the fundamental point. Either it's evidence of guilt, the silence in the face of Miranda, or it's not. It seems to me you're contending both ways. You faulted them for arguing that the silence is, that they've in the past used silence to show guilt, which you're saying is wrong, but that's what you're doing vis-a-vis the other individual. No, I'm not saying that it's not probative when my clients do it. That's not the position that I'm taking. What I'm saying is an assertion of rights in itself in a vacuum may not be probative. On these unique facts, the passenger, as I targeted the district court, he hit for the cycle. He asserts the full panoply of his constitutional rights. And when we juxtapose that with the behavior of my client, on these unique facts, the passenger's assertion of his constitutional rights is probative. And it's not, in the cases that... You know, if it had gone the other way, though, let's say that the prosecution was trying to put in this evidence, I suspect you'd be screaming at us that it's, if not Griffin error, Griffin-related error. Well, again, that's precisely the point. This is, it's not that, the reason that Griffin and Doyle and cases like that come out the way they do is not because an assertion of constitutional rights is not probative, but because it penalizes the exercise of a constitutional right. And actually the Supreme Court commented on that in a case called Wainwright versus Greenfield, where they stated that, sorry, I'm looking for it right here. The point of the Doyle holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him, and thereafter to breach that promise by using the silence to impeach his trial testimony. That's Wainwright versus Greenfield, a Supreme Court case. In contrast to the, to these cases, the typical criminal case where the government seeks to introduce a defendant's assertion of his constitutional right against him, there is an abundant, there are ample cases from the Supreme Court and this Court that hold that an assertion of constitutional rights can be probative. For example, the government's immigration judges use a immigration defendant's assertion of his constitutional rights. They can draw negative inference from that. They do that on a daily basis. Well, and that's true in civil cases. There certainly are situations where it can be used, but not in criminal cases. But, but, but, and even beyond that, the evidence did go in that the other individual vociferously, aggressively asserted Fourth Amendment rights, whether he had them or not in terms of the search. And it said, you know, you have a grounds arrest, you're not a citizen, you can't search, et cetera, Fourth Amendment rights. Didn't you get really the benefit of all of that out of that? Is this, isn't this, even assuming it was error and was an abuse of discretion or erroneous, isn't it harmless here? The jury knew that the other individual was trying his hardest to keep the search from proceeding. Absolutely not harmless, Your Honor. I have two things to that. First of all, again, as I, as I conceded before, maybe the passenger invoking in a vacuum doesn't mean anything, but when we marry that with what he did, it's secondary, objecting to the search, that has compounding exculpatory value. This is, there are synergies between the Fourth Amendment objections the passenger makes in the secondary and then asserting his Fifth and Sixth Amendment rights at the DEA office. This is, there's, again, there's compounding exculpatory evidence here. Secondly, and this was the point that I really wanted to make in closing argument, is that the passenger is sophisticated. We can infer from the way the passenger behaves, he's a sophisticated smuggler. And he knows, which the typical juror would not, but the passenger knows that if he's a passenger in a drug smuggling case and he invokes, he will likely be released. That is a high degree of sophistication and it also tends to show that he's getting a free ride for his drugs. That if he's in the passenger seat, he's sitting on top of his product, he gets a free ride. He doesn't have to ask the driver for permission to let him, to put the meth on the car. He has an opportunity to put the spare tire on the car. He has a couple of different opportunities. And he doesn't have to pay the passenger to drive it. He knows that they get stopped, which is exactly what happened, if he invokes, he's gone and leaves Mr. Maruca holding the bag. And that's the argument that I wanted to make to the jury. So those would be my two points on that. There's compounding exculpatory evidence and this is a sophisticated guy who knows he's going to walk away from this if he just invokes. Your Honor, I would also like to add that this Court in 2000 addressed the issue of the probative value of a search of constitutional rights and held that not allowing a negative inference to be drawn poses substantial problems for an adverse party. I'm sorry, I'm referring to the OXRL Rudy Glanzer v. Glanzer 232F3 at 1264. And this Court said one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding. Not allowing the negative inference to be drawn poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in the search for the truth. I think that this issue really, and having tried this case, I mean, this really speaks to the heart of what it means to get a fair trial. It's the government's burden to prove their case. It's the defendant's right to elicit testimony and facts and argue those facts that move the ball for him, that advance his theory of the case. And even the Hale Court, which the government mentions in their brief, the Hale Court says that this type of evidence would have an impact on the jury. And that is what Mr. Marufo was deprived of, his fundamental right to present a defense. And it's not as if we're trying to exclude something that did happen. We're simply trying to give the jury the complete picture. And with your Honor's permission, I'll move on to the Miranda issue. What we have here is pretty straightforward. The evidence before the District Court was that it was at least 50 percent likely that this agent, before giving Miranda warnings, says to the judge, this is your last opportunity to help yourself. I'll tell the prosecutor that you cooperated. He might tell the judge, and then that would result in a lower sentence. But wasn't there a question whether it was last or only, or just it is the opportunity, it is your opportunity? I thought there was some discussion about what exactly, and I don't have the ER before me, but there was reference at one point to the use of the word last or only. But wasn't the testimony that the officer would say, it is your chance, this is a chance to come clean, if you will, or get help? Right. The government in their response brief disputed that he was told it was his only opportunity. But the government elicited that testimony. It was a question from the prosecutor. He said, you tell suspects sometimes it's your only opportunity to help yourself. And the answer was yes. And then the District Court... It was at one time, but all of the other testimony was he didn't say it. But in any event, since it was 50-50, the trial court drew the conclusion it didn't happen. Why are we going to substitute our judgment here? We don't know. Nobody can say it did. The trial court commented on the state of the evidence, if you will. I'm not sure, and I know you're going to go to the point of shifting the burden, but at the very least it was commented on the state of the evidence. There was nothing to suggest that it was given other than a statement that sometimes I do, sometimes I don't. And didn't the public know? They were unfamiliar with the process and that was not true of your client. It was absolutely true of my client. The government went outside the record. I'm glad Your Honor brought that up. They went completely outside the record to say that Mr. Marufo had experience in these types of situations. In fact, we didn't find that out. They cited the PSR, because the government ran raps and didn't have any for Mr. Marufo. These agents didn't know that Mr. Marufo had been convicted of misdemeanors, which is all he had before. He'd never been convicted of a felony. The agents didn't know that. We have a migrant farm worker who doesn't speak English. This is exactly the type of person. I'm a little bit confused. Are you saying that the information about the four priors was not at the trial? Right. We didn't have it. It was in the PSR. It was in the PSR, but we didn't know about it. The government had run raps and it hadn't turned any of that up. So certainly the district court didn't know that. The agents didn't know that at the time they interrogated him. All the agents knew was that Mr. Marufo was a migrant farm worker who didn't speak English. So he's exactly the type of person who would be likely to receive this preamble. And moving on to the problem of the preamble. What would we have to do in order to say that he did? In other words, ought to conclude as you urge, what would we have to do? Would we have to do a little fact-finding? No, Your Honor. I think that in the light most favorable to the government, the evidence is no better than an equipoise. And as the government's burdened by... The evidence shows is he said he does it. He frequently does it, but he didn't do it this time. And nobody says he did do it this time. But you want to find that he did. I'm sorry, Your Honor. Respectfully, that's not what the evidence is. The evidence was he couldn't remember whether he did it this time, but he does it half the time. And neither of the agents could remember. So the evidence is, it's at least 50% likely they gave it this time. That's what I recognize. There's just nothing affirmatively that he did do it. He just, it's something that he does and he can't recall. And we don't have a record showing that he... But even if it's 50-50, they lose. That's what I'm saying. It's their burden. And it's not 50-50 because my client is a migrant farm worker who doesn't speak English. So it's more likely that they gave him this preamble. Do you want to reserve some time for... I would. Thank you. Good morning. May it please the Court. Mark Rahe for the United States. Your Honor, the District Court did not commit any of the alleged errors raised by the defense in this appeal. And I'll take the issues as my opponent brought them up. First of all, as far as the third-party culpability, the Supreme Court 30 years ago could not have been more clear in back-to-back cases in 1975 and 1976. First in the Hale case at 422 U.S. Reports at page 177, quote, in most circumstances, silence is so ambiguous that it is of little probative force. The very next year, Doyle at 426 United States Reports at page 617, every post-arrest silence is insolubly ambiguous. But isn't the question here, yeah, that's true vis-a-vis the defendant who's charged, that the defendant's silence, it's... But counsel is posing a different issue, and that is the other individual who's not been charged is under no... It wasn't on trial. So the question is, we do allow inferences in various other situations, whether it's in immigration, civil cases, et cetera. So why in this situation should the jury not be told, especially after having the evidence come in on the Fourth Amendment assertion by the other individual? By the way, also, when given Miranda rights, this person refused to respond. It's not... Arguably, it's not on probative vis-a-vis that individual. It's not being used as to the defendant, which is what was true in Doyle in the other case. Well, to go to the beginning of that, I would respectfully disagree with one aspect of Your Honor's statement. And I think defense is, they're trying to create this perception that the only value of Doyle and Hale is fairness and to protect those who exercise their rights to silence. But these clear, unequivocal holdings from the Supreme Court is that when you exercise your right to silence or invoke Miranda rights, we don't know why. There could be any number of reasons. But that's true on the civil side, too, but we allow it and it goes to weight. But on the civil side, the Fifth Amendment right against self-incrimination isn't enshrined for civil cases. That's for criminal cases. Right. And still in this case, the judge has to apply a 401 and a 403 balancing. He finds that there's no probative value because it's pure speculation. I mean, we don't even know... That goes to the weight. This seems to me to implicate a different concern than Doyle and Griffin, because I think everyone knows if you're allowed to say you asserted his right against self-incrimination, I mean, we've seen the arguments that the jury is going to infer that there's something negative about that. And it's a powerful inference. And the defense wanted to use that inference in this case. And that person's guilt or innocence wasn't at stake. Yeah, but I think that inference, though, isn't probative. Hale itself, 422 U.S. Reports of Page 180, says the problem, the reason they have a Doyle and Hale rule is because of the prejudice. When they say that jurors may jump to conclusions, that's not because the Supreme Court is saying, oh, this evidence is probative. They're saying that's why we have this rule, because it's irrational. We all know you have the right to remain silent. All these rights, Miranda, it's been enshrined for 40 years. I mean, I think the district court... Why, the number of times that the government has tried to use silence as probative, and now you're telling us, well, no, it's not probative, so what the heck? Is it, you sort of, as was suggested with defense counsel, aren't you trying to have your cake and eat it, too, here? Absolutely not. And I almost take offense to that in the reply brief. All jokes aside, Your Honor, basically there are two kinds of cases that the defense cited in the reply brief. Ones were ones where prosecutors were found to commit misconduct, because they commented on silence. So you're saying that that's our policy? Well, my question is, certainly the prosecutors were trying to get in that inference, and certainly somebody perceived in the prosecutorial side that it would be a strong inference, and it was deemed to be misconduct, I understand that. But the point is the prosecutors were trying to get it in, and now you're telling us, well, no, it has no probative value, isn't that kind of... The government taking two different positions, depending on whose ox is being gored. I don't believe so, Your Honor, because I don't know why other prosecutors' misconduct has to be held as the policy of the Southern District. No, no, I think you're taking offense where none was meant. I think it's only a reaction, and I know in the Southern District you litigate vigorously, but still, I think the only point is, doesn't that show that it's probative in some people's minds? I take your point from the cases. And that was only half of it. The other one, Velarde Gomez, there was a published panel decision. When the defense says, oh, we used to comment on the meaning of silence, it wasn't the same context, Your Honor. We have never said that the invocation of rights was probative. The Velarde Gomez line of cases dealt with, when you have an interrogation, you put guilty evidence in front of the defendant, what did he do, did he react, what was the difference in his demeanor? That's an entirely different issue than what we're talking about here, which is simply the bare invocation of rights in and of itself. And there was a published panel opinion that said that that was valid. It took an en banc case to reverse that. We don't do that anymore. So it's not a case, maybe we did things in the past and they were found to be wrong, but we're not trying to have our cake. They need it, too, here. But I can't make the point clearly enough, though, when the Supreme Court finds that this doesn't have inherent probative value, even if this Court says we're considering 401 when they said that, they were talking about the philosophic underpinnings of the Doyle and Griffin rule. Well, true, but I don't see why that analysis wouldn't also apply to a 401. I mean, the fundamental standards of relevance are based, does something have probative value? And when the Supreme Court says that silence is insolubly ambiguous, that to me would indicate it just isn't a probative value. But even if, as Your Honor pointed out a second ago, you could say, all right, that goes to wait, well, the Court still ruled under 403, and if the Court finds the government is as much entitled to a fair trial as the defendant, well, 403 isn't written specifically with reference to defendants. In this case, the Court looked at the evidence, litigated this extensively. There were six months of pretrial litigation in this case. The standard review is abuse of discretion. I know defense, whenever something has to do with the defense, they try to elevate it up to constitutional level. This Court has held time and time again, in third-party culpability cases, it's abuse of discretion. So even if your three honors sitting on this case might have a different view, that's not the standard you apply. And the rule 403 determinations of the district court are given considerable deference. That's the judge who has all the evidence in front of him. He's seen the demeanor. He believed in this case, he made a distinction. And I know Your Honor pointed out earlier, well, he let in the fourth stuff, why not the fifth? Well, there is an important distinction. Now, my point, the fourth stuff came in, and even if this were error, isn't it harmless? Because the effect that you want, that the defense wanted, the jury got. Oh, absolutely. And that is that the other party objected and was trying to prevent the search. And isn't that really what the defense wanted? And so even if we could say there was some abuse, my point was, even if there were some the silence, doesn't that cover what the proposed use would have been? Absolutely. And another thing I noticed in the reply brief, I was rereading it last night, defense wants to set up this issue that there were really just two pieces of third-party culpability, the Fourth Amendment-related, the Fifth Amendment. So therefore, they didn't get half. That's not true. As they note in the footnote of their 28J letter, there was ample other evidence. In primary, they got in the fact that even though the inspector was directing questions to the driver, the passenger answered most of them. They got in the fact that it's secondary, that the passenger vociferously objected not only to the search, but to his own pat-down, and that he demanded to see a supervisor. And they also got in front of the jury the fact that this vehicle had been parked for a half an hour in Yuma, Arizona, on the street in front of a friend of the passengers. So they had all of that evidence. They were able to argue fully. And what was the one thing they didn't get? Oh, by the way, he invoked his rights. That's all they could have said about that. An invocation by definition means an absence of communication. There's nothing more they could have gotten from that point. So for them to say this was somehow critical, I think that's sort of putting too much emphasis on that. And the last point I'd make with respect to harmless error, the entire premise of this argument, defense counsel talks about a synergy. He wanted to show that my defendant is compliant and, you know, has no consciousness of guilt. I think that's the phrase that often comes up. He consents to the search of the truck. The passenger doesn't. He agrees to waive his rights and make a statement. The passenger doesn't. But there's a crucial fact that he overlooks. During his statement that he made, he told some real whoppers, some real lies about his job. And I noted in the supplemental excerpts of record that the defendant submitted, the transcript of the district court's hearing on the motion for a new trial, the district court specifically identified that evidence is the most damaging evidence to this defendant's case. When he claimed he was in Yuma, Arizona, on his way to Salinas in the North Central Valley to go to work, the prosecutor called not only the president of the company that he claimed he worked for, Altie, but two foremen to say they have, based in Arizona, they have no business in Salinas. They never even go up there. So that is a pretty damaging lie that was given in his interview. So I think that already undercuts the strength of his claim of prejudice right there. Because his whole point is, oh, my guy's so innocent, I have no consciousness of guilt. When you tell bald-faced lies to federal investigators, that's the epitome of consciousness of guilt. But I think I've said enough about that issue. I'll use my remaining time for Miranda. With respect to Miranda, I think defense is putting, first of all, this incident, whether this preamble was given, has to be looked at in the proper legal perspective. The issue here is whether there was a knowing, intelligent, voluntary waiver. I, again, saw in the reply brief last night, defense is conceding that the statement was voluntary. So the only question is, was the Miranda waiver knowing, intelligent? There's a dispute in the papers. They claim the standard review is de novo, but they cite cases where it says that standard review only applies to the adequacy of the Miranda waivers. There's absolutely no dispute here. And there never was that the Miranda waivers, as given, complied with Miranda. And we introduced the DEA Form 13-8 Supplemental Excerpt of Record, page 23. The district court expressly found it to be accurate at excerpt of record, page 138. So the waiver itself is not an issue. But this court couldn't be more clear that when you look at whether something's knowing, intelligent, voluntary, that's a factual finding reviewed for clear error. And it also depends on the totality of the circumstances. So right there, when defense counsel a few minutes ago says, even if it's 50-50, we still lose, no, that is not true. Because this is totality of the circumstances, and there's nothing in this Court's precedent that says whether or not an agent gave a preamble, which is completely true, saying that if you cooperate, I will tell the prosecutor, and it could help your sentence. Kennedy. I know. In half the cases, it says it's 50-50, we lose, and he knew it. So we understand the rule on that point, I think. Well, okay, but I want to make, I just want to make a comment. The comment that was made that the defendant never argued or asserted that he was given that preamble, and the argument that that somehow shifted the burden. Your Honor, I don't believe that shifted the burden. I don't know that we – What a surprise. Yeah. I don't – I remember researching this. We have cases, several from other circuits, but the important point is the United States, which clearly holds that when a defendant testifies at a pretrial suppression hearing, that testimony cannot be used against them. In the cases we cite, the courts say, well, here we had a number of factors, and we did in this case. The waiver was given in the Spanish language, which was what the defendant spoke. There was no evidence of any threats, no weapons. Defendant wasn't handcuffed. Tone of voice wasn't raised. When you look at those totality of circumstances, the district court had enough to find that this meant the knowing, intelligent waiver. Then he notices, I have nothing to contradict this. We also quoted in our brief, the court was well aware of what the burden was, that the government has the burden of proving a knowing, intelligent waiver, and I don't think there's anything in the record which indicates that that wasn't complied with. But a couple other points I want to make, I find it's most interesting, this fact wasn't even brought up by the defendant. This was enlisted by the government. We don't have any testimony that this overbore his will or that this even was coercive. So not only would this court have to engage in one assumption, that this preamble was given, you'd have to engage in a further assumption that somehow it was so scary that it affected his defendant, who, it bears noting, never confessed. He never confessed. He never admitted knowledge of the drugs. So how in those circumstances it can be said to be, which the Supreme Court in Colorado v. Connelly said, you have to have coercive police conduct as a prerequisite for an involuntary Miranda claim. There is no evidence of that here, Your Honor. And I would also note in the reply brief, I think defendant is trying to make a distinction, well, here the preamble came before the Miranda warnings were given, and somehow that makes a difference. If you look through the paper, there's not a single case that the defendant ever cites that controls, that shows that that particular sequence is bad. The most he does is says, well, there are cases deal with a different sequence. But I would bring this court's attention to the Okafor case, which we cite in our papers. In that case, they gave the Miranda warning, and then they gave almost identical sort of substance as could have happened here, which is namely that you're looking at a lot of time. If you cooperate, I'll tell the prosecutor. Then the defendant waived. I would submit that the important question is whether this happened before the waiver. And in Okafor, maybe the exact sequence was shifted a little, but this court found that that is common police practice, that it doesn't violate any sense of Fourth Amendment fair play. And they specifically found that it didn't render the waiver invalid, which is the issue here. And again, if it's clear error, and if it's a totality of the circumstances, and this is just one circumstance, I don't know how this court can stand in a position to overrule the district court on this issue. And I see that my time is up. If there are any other questions, otherwise, I'll submit. Thank you, counsel. Your Honor, I'd like to pick up with the Whopper statements that counsel alluded to, the stories my client told about commuting to Salinas. As I argued in my closing for the jury, this is not, no one says that they commute from San Luis, Arizona to Salinas, California. It's like a seven or eight hour drive. That's not what he said. It was a mistake. The circumstances of my client's statement, the government chose not to videotape, not to audiotape, not to have my client write his own statement, not to even have my agent that took the statement was not fluent. He considered himself proficient in Spanish, not fluent, and finally, the agent did not include the stuff about commuting to Salinas in his report. He was impeached by omission twice. He signed an affidavit in support of the complaint under penalty of perjury, and he submitted a several page ROI report. I'm confused. You're starting to sound like a closing argument. Are you asking us to re-review the determination of credibility? No, Your Honor, I'm addressing harmless error. I'm saying that my client's statements alone did not determine this case. They didn't help, certainly, but the facts are these statements were taken in a context that it's unclear what happened in that room is what I'm getting at. This jury was out for the better part of a day, and so the fact that my client allegedly said he commuted to Salinas does not render this argument harmless error. Secondly, with respect to the Supreme Court making these pronouncements that silence is insolubly ambiguous, I would point out that in 1976, the exact same Supreme Court said in Baxter versus Palmigiano at 425 U.S. 308, 319, in referencing whether assertion of constitutional rights is probative, the position adopted by the Court of Appeals is rooted in the Fifth Amendment and the policies which it serves. It has little to do with a fair trial and derogates rather than improves the chances for accurate decisions. The court has consistently recognized that in proper circumstances, silence in the face of accusation is a relevant fact, not barred from evidence by the due process clause. This is such a unique and proper circumstance where this should have been put before the jury. I would point out that with respect to the third issue we haven't discussed, but the government got to introduce evidence that my client had a small personal use amount of marijuana on him. In some theory that by giving that to the agents, he was going to get them to stop searching his truck. I would argue that that is preposterous, but the fact that this 403 call also went against my client. The district court says, well, that goes to wait. You can argue it either way, but this invoke, that doesn't go to wait. It just seems unfair to me that this 403 door only swung one way. But the invoke, wasn't there also a concern that the prejudicial impact on the government, which wasn't true obviously with respect to the statement about the marijuana? Well, no, right. That was prejudicial to me. They both- But it was your client who said it. Right, and what I'm getting at, Your Honor, though, is that in the Northern District of California court has said that 403 concerns must take a backseat or must yield to the defendant's right to present a defense. That's Franklin versus Duncan, 884 F sub 1435, 1453 from 1995. That the authority granted a trial court to exclude evidence that is unduly prejudicial, cumulative, confusing, or misleading must yield to a defendant's constitutional right to present all relevant evidence. That's what I didn't get to do here. That's why Mr. Marufo was prejudiced. I'm running out of time. Just very briefly, I saw a docudrama that where President Johnson was talking to his speechwriter before he had to give a big speech, and he said to his speechwriter, put the music to it. That invoke was my music for this closing argument. That's what should have been before the jury. That's what would have given Mr. Marufo a fair trial. Thank you. The case has heard will be submitted. Thank you both for your arguments.
judges: Farris, Thomas, Schiavelli